IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| KENNETH L.[1], | Case No. 1:21-cv-01651-HL |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

HALLMAN, Magistrate Judge:

Plaintiff Kenneth L. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income benefits ("SSI") under Title XVI of the Social Security Act ("the Act"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g). and 1383(c)(3). For the following reasons, this case is REVERSED and REMANDED for calculation and payment of benefits.

---

[1] In the interest of privacy, the Court uses only Plaintiff's first name and the initial of the last name.

1-OPINION AND ORDER

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter ... a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

**BACKGROUND**

**I.    Plaintiff's Application**

Plaintiff protectively filed for SSI on September 27, 2018, alleging disability beginning February 28, 2017, due to surgery C5-C7 (2010); fusion C4-C7 (June 2018); lost feeling in both hands (January 2018); inability to use right shoulder following surgery; discectomy L3-L4; knot

in left side of lower back impeding walking and standing; depression; anxiety; and insomnia. Tr. 19, 69, 180.[2] At the time of his application, Plaintiff was 41 years old and had completed his GED. Tr. 156, 181.

Plaintiff's application was denied initially on May 19, 2019, and again on reconsideration on January 24, 2020. Tr. 86, 92. Plaintiff requested a hearing which was held telephonically before an ALJ on January 13, 2021. Tr. 36. Plaintiff, represented by counsel, testified, as did a vocation expert ("VE"). Tr. 34-55. On February 2, 2021, the ALJ issued an unfavorable decision, denying Plaintiff's claim. Tr. 16-29. On September 8, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final of the Commissioner. Tr. 5-7. Plaintiff timely filed this request for district court review.[3]

## II.   Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 416.920(b).

---

[2] Citations to Tr. refer to the Transcript of Social Security Administrative Record as numbered in ECF No. 7-1.

[3] All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). *See* ECF No. 12.

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. § 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's residual functional capacity ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform past relevant work. *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. at 142; 20 C.F.R. § 416.920(e), (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.966.

4-OPINION AND ORDER

### III.    The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 27, 2018, the date of application.  Tr. 21.  At step two, the ALJ determined that Plaintiff had severe impairments of:  cervical degenerative disc disease, lumbar degenerative disc disease, right shoulder degenerative joint disease, obesity, and asthma.  *Id*.

At step three, the ALJ determined that Plaintiff had the RFC to:

> perform sedentary work as defined in 20 CFR 416.967(a) except occasionally lift and carry up to 10 pounds; frequently lift and carry less than 10 pounds; sit for six hours in an eight our day; stand or walk in combination for no more than two hours in an eight hour day; and push and pull as much as can lift and carry.  He can occasionally reach overhead bilaterally and frequently reach in all other directions.  [Plaintiff] can occasionally climb ramps and stairs; avoid ladders, ropes, and scaffolding; occasionally stoop, kneel, and crouch; never crawl; never work at unprotected heights; and never work in the vicinity of moving mechanical parts.  He must avoid exposure to dust, fumes, and other pulmonary irritants.  [Plantiff's] time off task can be accommodated by normal breaks.

Tr. 23-24.

At step four, the ALJ determined that plaintiff had no past relevant work, but that considering his age, education, work experience, and RFC, and based upon the testimony of the VE, plaintiff could perform jobs that exist in significant numbers in the national economy, including cutter paster, document preparer, and surveillance monitor.  Tr. 28.

## DISCUSSION

The parties agree that the ALJ's opinion contains legal error and that the case should be remanded.  Plaintiff, however, argues that the case should be remanded for immediate payment of benefits while the Commissioner argues for further proceedings.

Plaintiff alleges the ALJ erred by: (1) failing to provide clear and convincing evidence to reject Plaintiff's subjective symptoms testimony related to daytime somnolence and hand numbness; and (2) improperly rejecting medical source opinion from Christopher Holland, M.D.

5-OPINION AND ORDER

Plaintiff argues that if Dr. Holland's testimony were credited as true, then the ALJ would be required to find Plaintiff disabled on remand and this Court should therefore remand for immediate payment of benefits.

In response, the Commissioner concedes that the ALJ erred by purporting to credit the medical opinion of Dr. Holland, yet failing to account for all the doctor's assessed limitations in the RFC. In arguing for remand for further proceedings, the Commissioner appears to argue that the ALJ properly discredited Plaintiff's subjective symptom claims by pointing to evidence in the record inconsistent with Plaintiff's claims of debilitating symptoms and that plaintiff merely offers an alternative interpretation of the record.

This Court accepts the Commissioner's concession that the ALJ failed to properly account for all of the limitations assessed by Dr. Holland in the RFC. For reasons set forth below, this Court also agrees with Plaintiff that the ALJ improperly rejected his subjective symptom testimony. Finally, this Court agrees with Plaintiff that this case should be remanded for immediate payment of benefits.

**I.      Subjective Symptom Testimony**

    **A.      Legal Standards**

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to

show that the impairment could reasonably be expected to cause the severity of the symptoms, but only to show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that he does not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Id.* To discredit a claimant's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

B. Analysis

In his function report, Plaintiff listed lack of feeling in his hands, unsteady legs, and difficulty concentrating as conditions that limit his ability to work. Tr. 202. Plaintiff testified that he left his last job, which involved handling cash, because his loss of feeling in his hands would cause him to miscount money when bills would stick together and his "count was off by hundreds of dollars." Tr. 40. He testified that numbness in his hands made it difficult to even hold a coffee cup. Tr. 41. He testified that despite rotator cuff surgery, he still has pain reaching over head and that sometimes he has spasms that "lock" up his arms and hands. Tr. 42. He testified that he participated in physical therapy and that "[i]t was only helpful to the degree where I learned to deal with the pain better. It did not relieve the pain . . . ." Tr. 43. Plaintiff testified that loss of feeling in his hands makes it difficult to do things like wash dishes and that his ability to hold something may last five minutes before he drops the object. Tr. 44. He

7-OPINION AND ORDER

testified that, per two of his physicians, his maximum lift capacity is supposed to be a cup of coffee and that if he picks up a coffee pot, he can feel his hands shaking from it, causing pain. Tr. 45.  He testified that, due to loss of feeling, he has burned his hands without noticing when reaching into the oven.  Tr. 44.

Plaintiff testified that his girlfriend does 90 percent of household work, including preparing meals.  Tr. 46-47.  He testified that washing dishes causes pain in his shoulders, upper back, neck, and that he gets headaches.  Tr. 47.  In his function report, Plaintiff stated that he spends about half an hour washing clothes once a week but that he needs help with folding.  Tr. 205.  He stated that he is able to go out alone, but that he does not drive and that he shops for groceries once a month for two hours.  Tr. 206.

Plaintiff testified that he uses a CPAP machine for his sleep apnea but that he only sleeps for a couple of hours at a time and then either wakes up in pain or because he feels like he stopped breathing.  Tr. 43.  As a result, he testified, "there are times where it doesn't matter what I am doing, I will literally pass out.  I will just go to sleep wherever I'm at because my body is exhausted."  *Id*.  Plaintiff testified that he generally falls asleep two to three times a day and that he passes out once a day.  Tr. 44.  He testified that he no longer allowed to drive due to sleep apnea-related issues.  Tr. 54.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's "statements regarding the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  Tr. 25.  Specifically, the ALJ discredited Plaintiff's testimony that he falls asleep two to three times a day, passes out on a daily basis, and that he is unable "to handle anything with his hands."  Tr. 22.  Finding these symptoms not supported by

8-OPINION AND ORDER

the record, the ALJ noted that plaintiff was able to "perform some household chores and leave home to grocery shop for two hours once a month." *Id*.

For the following reasons, this Court concludes that the ALJ failed to offer specific, clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony.

### 1. Activities of Daily Living

An ALJ may properly discredit subjective symptom allegations if a claimant "engages in daily activities that are incompatible with the severity of symptoms alleged." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). Likewise, an ALJ may discredit subjective symptom allegations "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferrable to a work setting." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (emphasis removed). A claimant need not, however, be "utterly incapacitated to be eligible for benefits." *Id*. Here, Plaintiff testified that he performs fairly minimal household chores – weekly laundry with assistance, once a month grocery shopping, and some dishwashing – none of which could reasonably be construed as taking a substantial part of his day; nor is it apparent that they would be transferrable to a work setting. Minimal activities do not contradict allegations of disability. *Orn*, 495 F.3d at 639. Further, it is unclear how this minimal housework and once-a-month grocery shopping contradict his claims of daytime somnolence and lack of feeling in his hands. Thus, to the extent the ALJ relied on Plaintiff's activities of daily living to discredit his subjective symptom testimony, this was not a clear and convincing reason supported by substantial evidence.

### 2. Daytime Somnolence

In December 2018, Plaintiff was diagnosed with mild obstructive sleep apnea ("OSA") after undergoing polysomnography at a sleep disorders clinic. Tr. 575-81, 729-33. Among his

9-OPINION AND ORDER

symptoms were an Epworth Sleepiness scaled score of seven out of 24 (which had previously been noted as "high as a 10 out of a possible 24"), and daytime fatigue and sleepiness. Tr. 731. In September 2019, Plaintiff presented to the emergency department complaining of dizziness and shortness of breath, and reported that he had been repeatedly passing out or falling asleep without warning. Tr. 630. The doctor surmised that Plaintiff could be experiencing narcolepsy and advised him not to drive or climb to high places where he could possibly fall. Tr. 634. Following an October 2019 home sleep apnea test showing significant OSA, Plaintiff began using a CPAP machine. Tr. 729-30. In January and February 2020, although Plaintiff reported he felt more rested with CPAP, he nonetheless experienced daily sleep attacks. Tr. 767-68, 776-77.

The ALJ did not discuss any medical records related to Plaintiff's sleep apnea or daytime sleepiness in the discussion of Plaintiff's subjective symptom allegations. As part of the step two analysis, the ALJ found Plaintiff's OSA to be non-severe, citing the January 2020 chart note mentioned above and finding that "the record shows he feels 'rested' with CPAP." Tr. 22. The Commissioner urges that this treatment note contradicts Plaintiff's claims of nodding off and passing out and that the ALJ, therefore, properly discredited Plaintiff's subjective symptom testimony. Assuming without deciding that the ALJ's step two analysis suffices to properly reject Plaintiff's subjective symptom allegations, this chart note is not a clear and convincing reason to discredit Plaintiff's testimony. To the contrary, the entire chart note indicates Plaintiff continued to experience daytime somnolence despite the CPAP. Under the heading "sleep attack," the note reads:

> The symptoms are reported as being moderate. The symptoms occur daily. He states the symptoms are chronic. [P]t diagnosed with OSA. [H]e has started CPAP. [F]eeling more rested with CPAP[.]

10-OPINION AND ORDER

Tr. 777. Thus, the ALJ failed to provide clear and convincing reasons to discredit his testimony.[4]

### 3. Hand Numbness

Plaintiff is right-hand dominant. Tr. 316. In May 2018, a pin prick exam showed decreased sensation in his right thumb and third digit. Tr. 319. In June 2018, prior to his C4-7 fusion surgery, Plaintiff demonstrated decreased fine finger movements bilaterally and mild numbness in both hands. Tr. 299. In August 2018, one month after his surgery, Plaintiff reported right arm weakness and right hand numbness and tingling. Tr. 270, 509. He continued to complain of right hand numbness and in March 2020, a physical exam revealed diminished sensation of the fourth and fifth fingers of the right hand. Tr. 647, 696, 701.

The ALJ acknowledged the March 2020 physical exam showing plaintiff had diminished sensation in his hand. Tr. 25. The ALJ found Plaintiff's testimony of "not being able to handle anything with his hands," unsupported by the record, yet found "it reasonable to assume that the [Plaintiff] would have exertional, manipulative, and postural limitations due to his history of neck and back surgeries with residual pain and numbness." Tr. 26-27. Noting a May 2020 physical exam where Plaintiff showed full power motor strength in his upper extremities, the ALJ stated that he nevertheless "accommodated the [Plaintiff's] impairments by including . . . manipulative . . . limitations into the residual functional capacity." Tr. 27. The RFC contains no manipulative limitations related to handling. Regardless of what appears to be an internal

---

[4] The Commissioner also points to treatment records, cited by the ALJ throughout the decision for other purposes, that noted Plaintiff appeared "alert" and argues that the ALJ pointed to records that contradict Plaintiff's claims of daytime somnolence. The ALJ, however, did not make this argument and the court may not affirm an ALJ's decision based on *post-hoc* reasons identified by the Commissioner on review. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).

inconsistency, the ALJ did not provide clear and convincing reasons to discredit Plaintiff's hand numbness testimony.

In sum, the ALJ erred by failing to provide clear and convincing reasons to discredit Plaintiff's subjective symptom testimony.

## II.  Remand

### A.  Credit-as-True Standard

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted).  Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits.  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014).  The issue turns on the utility of further proceedings.  A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act.  *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

Generally, where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand," the district court should remand for payment of benefits. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

In conducting this analysis, the district court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully

12-OPINION AND ORDER

developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.*

Even where all the requisites are met, however, a court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (citing *Burrell*, 775 F.3d at 1141 (internal quotation marks omitted)).

**B.     Discussion**

Here, the credit-as-true standard is met, and on this record, the Court has no serious doubts as to whether Plaintiff is disabled.

The Commissioner argues that the first prong is not met because significant factual conflicts and ambiguities exist in the medical record. Specifically, the Commissioner urges that the differing opinions of state agency doctors and Dr. Holland create an evidentiary conflict that must be resolved through additional proceedings. The Court disagrees.

After discussing the persuasiveness of Dr. Holland's opinion, the ALJ addressed the state agency medical opinions, "adopting their conclusions regarding [Plaintiff's] nonsevere mental impairment," but rejecting the opinions that Plaintiff could perform light work, and finding that

13-OPINION AND ORDER

the objective medical evidence supported greater limitations. Tr. 27. Having found Dr. Holland's opinion "somewhat persuasive as it is consistent with the objective medical evidence over the relevant period," and having rejected the corresponding state agency opinions for inconsistency with the objective medical records, the ALJ already appears to have resolved any conflict of medical opinion.

Relying on *Dominguez, supra,*, 808 F.3d at 409, the Commissioner argues that the ALJ's "well supported credibility concerns," as expressed through the ALJ's rejection of Plaintiff's claims of daytime somnolence and hand numbness, create factual issues requiring resolution. Notwithstanding this Court's conclusion, *supra*, that any credibility concerns were not "well supported," this case stands in stark contrast to *Dominguez*. In that case, the Ninth Circuit found that the ALJ "explained his adverse credibility determination in his assessment of [the plaintiff's] RFC in some detail," and moreover that this adverse credibility determination "was supported by evidence of skepticism on the part of [the plaintiff's] physicians" regarding claims of limitations, and inconsistent reports from the plaintiff herself. *Dominguez*, 808 F.3d at 406, 409. Here, neither the Commissioner nor the ALJ identified any inconsistent symptom claims made by Plaintiff. Likewise, the record contains no indication that Plaintiff's medical providers have expressed any skepticism regarding his complaints. To the contrary, Plaintiff's primary care provider opined that Plaintiff is severely limited by his impairments. *See* Tr. 840-42.

In sum, any apparent conflicts identified by the Commissioner do not require further proceedings for resolution. The record in this case has been fully developed. In response to hypotheticals posed during the hearing, the VE provided sufficient testimony to evaluate whether Plaintiff is disabled. Accordingly, the first prong of the credit-as-true analysis is met.

14-OPINION AND ORDER

As to the second prong, the parties agree that the ALJ failed to provide legally sufficient reasons for rejecting the medical opinion of Dr. Holland and this Court has already concluded that the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's subjective symptom testimony.

As to the third prong, this Court concludes that if the any of the improperly discredited evidence were credited as true, the ALJ would be required to find the Plaintiff disabled on remand. In December 2020, Dr. Holland completed a residual physical functional capacity assessment questionnaire. Tr. 840-42. Dr. Holland indicated that he had been Plaintiff's primary care physician since April 2018 through the time when he completed the questionnaire. Tr. 840. Dr. Holland stated that Plaintiff's primary symptoms were back pain with radicular pain to the right leg, neck pain with associated right arm and hand numbness, and right shoulder pain and weakness. Tr. 840. He opined that throughout an eight-hour workday, Plaintiff could occasionally lift and/or carry ten pounds, frequently lift or carry less than ten pounds, and stand and/or walk for 30 minutes at one time, for a total of three hours. Tr. 841. Dr. Holland opined that Plaintiff could sit for one hour at a time, and for a total of four hours in an eight-hour day. Dr. Holland stated that the sitting, standing, and walking limitations were due to Plaintiff's back and neck pain, which would require him to lie down. *Id*. Dr. Holland opined that Plaintiff could never climb, balance, crawl, or reach overhead, and could occasionally stoop, bend, kneel, crouch, reach at shoulder height, use gross manipulation (handling), and use fine manipulation (fingering). *Id*. Dr. Holland explained that Plaintiff's limitations for use of his upper extremities was due to numbness and intermittent pain to the upper right extremity, and occasionally to the left upper extremity. Tr. 842. Explaining that Plaintiff's current medication regime would likely cause drowsiness and fatigue, Dr. Holland opined that in a standard eight-hour, five-day

15-OPINION AND ORDER

workweek, Plaintiff's concentration would be impaired to such a degree that he could not perform simple tasks 20 percent of the time. *Id*. Dr. Holland also opined that he would expect Plaintiff to miss 16 hours or more work per month due to his impairments, symptoms, or medication side effects. *Id*.

The VE testified that if a hypothetical person with Plaintiff's age, education, work experience and the limitations included in ALJ's RFC, except changed to limit to occasional reaching in all direction and also occasional handling, fingering, and feeling, there would be no jobs for that person. Tr. 52-53. The VE also testified an individual will not be able to maintain employment if they miss more than eight hours of work in a month. Tr. 52. Likewise, the VE testified that if a person is off task more than ten percent of a workday, they will not be able to maintain employment. *Id*.

As Plaintiff points out, Dr. Holland opined that Plaintiff could only walk, stand, or sit in combination for a total of seven hours in an eight-hour day, necessitating finding Plaintiff disabled if credited as true. Indeed, if any of Dr. Holland's opinions regarding postural, manipulative, and exertional limitations, or time off-task, or absenteeism were credited as true, even individually, the ALJ would be required to find Plaintiff disabled on remand. Likewise, independent of Dr. Holland's opinion, if either of Plaintiff's improperly discredited subjective symptom complaints were credited as true, the ALJ would be required to find Plaintiff disabled.

Because Plaintiff has satisfied the credit-as-true standard, and because the Court does not have serious doubt whether Plaintiff is disabled, the Court exercises its discretion to remand this case for an award of benefits.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, this case is REVERSED and REMANDED for calculation and payment of benefits.

IT IS SO ORDERED.

DATED October 12, 2022.

/s/ ANDREW HALLMAN
ANDREW HALLMAN
United States Magistrate Judge